**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FORREST ALLEN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>  vs.<br><br>INTERPLAY LEARNING, INC., a DELAWARE CORPORATION; and DOES 1 through 25, inclusive,<br><br>      Defendants. | Civil Action No. 1:25-cv-02084<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>  1.  **VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**<br><br>**JURY DEMANDED** |

CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Defendant INTERPLAY LEARNING, INC. ("Defendant" or "Interplay Learning") uses data broker software on its website – https://www.interplaylearning.com/ (the "Website") – to secretly collect data about Website visitors' computer, location, and browsing habits. The data broker software then compiles this data and correlates that data with extensive external records it already has about most Californians in order to learn the identity of the Website user.

2.      Defendant's installation and use of data broker software without obtaining consent is a violation of the California Trap and Trace Law.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

4.      This Court has jurisdiction over Defendant Interplay Learning, a Delaware corporation, because it maintains its principal offices in Austin, Texas.

5.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

6.      Plaintiff Forrest Allen ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within California. Plaintiff maintains reasonable expectations of privacy when browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

7.      Interplay Learning owns, operates, and/or controls https://www.interplaylearning.com/ (the "Website"). Through the Website,

CLASS ACTION COMPLAINT

2

Defendant offers its customers an educational platform to train individuals or employees in such areas as plumbing, electrical services, facilities maintenance, HVAC, and CHVAC.

8. Plaintiff identifies Doe Defendants 1 through 15 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

9. Each Doe Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each Doe Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan to unlawfully track individuals located in California when visiting the Website for Defendant's commercial gain.

## FACTUAL ALLEGATIONS

10. Defendant is the proprietor of the Website.

11. The Website, like most other websites, can determine the approximate geolocation of its visitors once the visitors request to visit the Website from their devices. On information and belief, Defendant and the Website can determine the geolocation from, for example, a visitor's IP address. The unlawful surveillance alleged herein collects information that can identify a Website visitor well beyond his or her IP.

12. Defendant has partnered with at least one registered California Data Broker in order to deanonymize and develop clandestine user profiles on otherwise anonymous visitors to the Website (a "Data Broker"). Defendant has done this by installing at least one Data Broker Software Development Kit on the Website.

13. DBSDKs are designed to track and correlate visitors by capturing electronic impulses designed to identify them. This is accomplished through "browser fingerprinting," a process by which Data Brokers are able to ascertain the

CLASS ACTION COMPLAINT

3

identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser.

## Registered California Data Brokers

14.    Data Brokers are companies whose core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations.  Data Brokers operate largely behind the scenes, often without direct interaction with the individuals whose data they monetize.

15.    Data Brokers gather information from a wide variety of sources, including by purchasing information from commercial sources like retailers, financial institutions, online marketplaces, subscription services, and loyalty programs.

16.    Once the data is collected it is consolidated and organized into comprehensive profiles that may include thousands of attributes per individual.  The data is then cross-referenced and linked using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources.

17.    Data Brokers are accumulating data and profiling individuals to an alarming extent.  As the CEO of a Data Broker recently described the extent of their surveillance abilities as to an otherwise anonymous individual:  "We know who she is, what she watches, what she reads, and who she lives with.  [We] also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys.  We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation."[1]

---

[1] Lucas Ropek, Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users, March 15 2025 (Gizmodo.com).

CLASS ACTION COMPLAINT

4

18.    Given the amount of data available by way of the Data Brokers' practices, a company like Defendant has an incentive to partner with a Data Broker so that it can learn the identity of their website visitors in order to harass them with unwanted solicitations.

19.    Defendant has in fact partnered with the Data Brokers mentioned herein, by installing software on the Website in order to deanonymize, identify and target prospective customers, while allowing Data Brokers to access, use, and monetize the data provided by Defendant, in manners that are never shared with anyone outside of their organization who does not purchase it.

**Defendant and the California Data Brokers**

20.    Defendant's installation and use of DBSDKs violates the California Trap and Trace law.

21.    Specifically, Defendant has installed the DBSDK of LiveRamp, Inc. (the "LiveRamp DBSDK").

22.    LiveRamp is one of the largest data brokers in California, specializing in deanonymization of website users. The LiveRamp DBSDK tracks online signals from a website visit and matches it with their vast database to create a universal serial number for a person called a "RampID." The LiveRamp DBSDK functions as follows:

23.    First, when the LiveRamp DBSDK loads on a webpage, it immediately captures the user's identifiers present in that context – e.g. reading any first-party cookie ID or a platform's ID that the page passes, as well as standard header info like IP and user-agent.

24.    Second, the data obtained by the LiveRamp DBSDK is sent to LiveRamp's servers where LiveRamp combines the data obtained from a visit to Defendant's website with other data it has obtained about the individual both online and offline. This data includes name and postal address, email address, cookie IDs, and mobile device IDs.

25. Third, through this process, the user is matched with their pre-existing "RampID" (data broker serial number). LiveRamp's RampID is permanent, and designed to persistently track an individual across thousands of websites. RampIDs do not change with clearing cookies or switching devices. The RampID, and the data associated with it, is widely shared with dozens of ad tech partners so that all parties who pay for it can identify the user, and see the user's online habits.

26. Identification of website visitors through the LiveRamp DBSDK happens in "real-time," allowing the websites of LiveRamp's customers to "access people-based data immediately at the time of impression." It also works across devices: In other words, the LiveRamp DBSDK can inform websites using it that the same account or person has accessed the website from different devices. As LiveRamp explains, "[w]ith impressions matched to a persistent people-based ID, data are stitched across devices and not lost over time with new cookies or phones."

27. Visitors to the Website do not meaningfully consent to this identification. The tracking described herein is third-party and occurs by default. Visitors to Defendant's Website are not made aware of, and are not able to disable, this tracking and identification.

**Plaintiff Was Subjected to the Trap and Trace Device on the Website**

28. Plaintiff visited the Website on July 18, 2025. When Plaintiff did so, their identifying information by way of electronic impulses was sent to LiveRamp. On information and belief, such information included at the very least Plaintiff's approximate location, and data about his browser and device. The purpose of this transfer of their data from Defendant to LiveRamp was for de-anonymization, profiling, targeting and ongoing browsing tracking (as described *supra*). The transfer benefitted both Defendant and LiveRamp financially.

29. On information and belief, LiveRamp took Plaintiff's information and added the information to its profiles of Plaintiff. In turn, Defendant received other relevant data obtained by LiveRamp regarding Plaintiff. LiveRamp could then use

data regarding Plaintiff's visit to further profile Plaintiff, with the objective of monetizing this data by selling or licensing it to other entities, including law enforcement and government agencies.

30.    In this regard, a recent report by the Brennan Center, a public policy nonprofit, has explained that "government agencies may purchase personal data to further their exercise of coercive powers, including the ability to deport, arrest, incarcerate, or even use lethal force."[2]  There are recent examples of tech companies exchanging information with the federal government in ways that threaten harm to women's freedom, minority viewpoints and marginalized United States citizens or residents. For example, U.S. Immigration and Customs Enforcement (ICE) has partnered with Palantir Technologies, a Denver-based software company, to use artificial intelligence and data mining to identify, track, and deport suspected noncitizens.[3]  Another example of such government data exchange is the provision by Meta, pursuant to valid warrants, of user data such as Facebook messages, for the purpose of investigating and prosecuting state crimes related to abortion.[4]

31.    The prospect of private entities such as Data Brokers sharing data they have collected and organized into individualized profiles with government entities has increased significantly in 2025.  Columbia and Brown Universities recently agreed to turn over data about applicants and students, such as their race, grades and

---

[2] https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole

[3] https://www.americanimmigrationcouncil.org/blog/ice-immigrationos-palantir-ai-track-immigrants/.

[4] https://www.nbcnews.com/tech/tech-news/facebook-turned-chat-messages-mother-daughter-now-charged-abortion-rcna42185.

CLASS ACTION COMPLAINT

7

standardized test scores to the federal government.[5]   During this year, tech companies have complied with unprecedented demands for concessions from the federal executive branch.[6]   Further, the current federal administration has threatened retaliatory action against pharmaceutical companies that refuse to comply with demands to lower drug prices.[7] No clear legal authority exists preventing the sale or dissemination of user data by Data Brokers to the federal government.

32.    The only purpose of the LiveRamp DBSDK is to identify users.  The LiveRamp DBSDK "uses identifiers (such as name and postal address, email address, RampIDs, cookie IDs or mobile device IDs) to match [ ] records [concerning visitors to a customer's website] to other identifiers in our Identity Graph."  According to LiveRamp, "[a]n identity graph is a data structure that maps relationships between various identifiers [of persons or accounts] and links them."

33.    There is no way for Plaintiff to learn what LiveRamp did with Plaintiff's data, including what inferences LiveRamp has gleaned from it, or when, why and to whom LiveRamp has sold or licensed Plaintiff's data.  As such, Plaintiff has been injured by Defendant's surveillance practices.

---

[5] *See, e.g.,* Sharon Otterman & Anemona Hartocollis, "Columbia and Brown to Disclose Admissions and Race Data in Trump Deal," (New York Times Aug. 6, 2025), found at https://www.nytimes.com/2025/08/05/nyregion/columbia-brown-admissions-trump.html.

[6] *See, e.g.,* Rob Wile & Allan Smith, "The CEO in chief: How Trump is getting what he wants from big business," (NBCNews.com Aug. 14, 2025), found at https://www.nbcnews.com/business/business-news/what-trump-involvement-major-corporations-means-us-politics-business-rcna224630.

[7] *See, e.g.,* Anna Bratulic, "In latest Trump salvo, pharma giants face 60-day ultimatum on price cuts," (First Word Pharma, July 31, 2025), found at https://firstwordpharma.com/story/5985417.

34.     Plaintiff was never informed of, and therefore could not have consented to, data collection by LiveRamp for mercantile purposes.  Plaintiff has no way to know the scope of the injury suffered because the Data Brokers, including LiveRamp, operate in secret and without public disclosure of their operations.

**The LiveRamp DBSDK is A Trap and Trace Device.**

35.     CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

36.     The LiveRamp DBSDK is a process to identify the source of electronic communication by capturing electronic impulses sent out from Website users' devices and identifying dialing, routing, addressing, and signaling information about or generated by the users.  The users are never informed that the Website is collaborating with LiveRamp to obtain their phone numbers and other identifying information.

37.     The LiveRamp DBSDK is "reasonably likely" to identify the source of electronic impulses sent from devices visiting the Website.  In fact, the LiveRamp DBSDK is designed solely to meet this objective.

38.     Defendant did not obtain a court order before installing or using the LiveRamp DBSDK on its Website.

39.     Defendant did not obtain the express or implied consent of Plaintiff to be subjected to data sharing with LiveRamp for the purposes of de-anonymization, profiling, and targeting.

40.     Defendant is statutorily ineligible to assert consent as a defense to its illegal use of a Trap and Trace device. Under Penal Code § 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant, a company that operates a website for product and

CLASS ACTION COMPLAINT

information promotion, is not. *See, e.g., Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at \*12 (S.D. Cal. Feb. 13, 2025); *Mirmalek v. Los Angeles Times Communications LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at \*5 (N.D. Cal. Dec. 12, 2024).

41.    The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et seq.*, imposes civil liability and provides for statutory damages for the installation and use of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that data broker software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication," and is not limited to telephone lines).

## CLASS ALLEGATIONS

42.    Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to registered California Data Brokers including LiveRamp as a result of visiting the Website within the limitations period.**

43.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more.  The exact identities of Class Members may be ascertained by the records maintained by Defendant.

44.    COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the

individual circumstances of any Class Member, include but are not limited to the following:

      a.  Whether the LiveRamp DBSDK is a trap and trace process as defined by California law;

      b.  Whether Plaintiff and Class Members are entitled to statutory damages;

      c.  Whether Class Members are entitled to injunctive relief; and

      d.  Whether Class Members are entitled to disgorgement of unlawfully obtained data.

45.    TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by LiveRamp, Plaintiff is asserting claims that are typical of the Class.

46.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

47.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

## FIRST CAUSE OF ACTION

### Violations of California Trap and Trace Law

### Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

48.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

49. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

50. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

51. The LiveRamp DBSDK, as deployed on the Website, constitutes a trap and trace device under Cal. Penal Code § 638.50(c). The LiveRamp DBSDK is designed to identify the source of the electronic and wire communications sent from the devices of users located in California when visiting the Website in violation of the California Trap and Trace Law.

52. Defendant did not obtain a court order before using or installing the LiveRamp DBSDK on the Website. Defendant also did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology, including the LiveRamp DBSDK, to identify visitors to its Website.

53. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order that data unlawfully obtained by Defendant's deployment of a trap and trace device be disgorged;

3. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

4.    Statutory damages pursuant to CIPA;

5.    Reasonable attorneys' fees and costs; and

6.    All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: December 18, 2025          TAULER SMITH LLP


By:    */s/ Robert Tauler*
        Robert Tauler, Esq.
        (SB # 24122095)
         *rtauler@taulersmith.com*
        J. Evan Shapiro, Esq.
        (SB # 218481 [California])
        (*pro hac vice* forthcoming)
         *eshapiro@taulersmith.com*

        **TAULER SMITH LLP**
        626 Wilshire Bvld., Suite 550
        Los Angeles, CA 90017
        Telephone: (213) 927-9270

        100 Crescent Court, 7th Floor
        Dallas, TX 75201
        Telephone: (512) 456-8760

        *Attorneys for Plaintiff Forrest Allen*

CLASS ACTION COMPLAINT

13

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: December 18, 2025                  TAULER SMITH LLP


By:    */s/ Robert Tauler*
       Robert Tauler, Esq.
       (SB # 24122095)
        *rtauler@taulersmith.com*
       J. Evan Shapiro, Esq.
       (SB # 218481 [California])
       (*pro hac vice* forthcoming)
        *eshapiro@taulersmith.com*

       **TAULER SMITH LLP**
       626 Wilshire Bvld., Suite 550
       Los Angeles, CA 90017
       Telephone: (213) 927-9270

       100 Crescent Court, 7th Floor
       Dallas, TX 75201
       Telephone: (512) 456-8760

       *Attorneys for Plaintiff Forrest Allen*

CLASS ACTION COMPLAINT
14