**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| FORREST ALLEN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br>  vs.<br><br>INTERPLAY LEARNING, INC., a DELAWARE CORPORATION; and DOES 1 through 25, inclusive,<br><br>      Defendants. | Civil Action No. 1:25-cv-02084-ADA-ML<br><br>**PLAINTIFF FORREST ALLEN'S OPPOSITION TO DEFENDANT INTERPLAY LEARNING, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1) AND 12(B)(6)** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES.............................................5

I. INTRODUCTION .........................................................................................5

II. RELEVANT FACTUAL BACKGROUND .........................................................6

III. LEGAL STANDARD ...................................................................................8

    A. Legal Standard for a Motion to Dismiss Under Rule 12(b)(1) ......................8

    B. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6) ......................8

IV. ARGUMENT...............................................................................................9

    A. Plaintiff has Article III Standing.................................................................9

    B. Plaintiff Adequately Alleges Collection of Identifying Information ............10

    C. Plaintiff Adequately Alleges Traceability...................................................11

    D. The FAC States a Claim Under CIPA § 638.51...........................................12

        1. The FAC alleges that LiveRamp SDK is a Trap and Trace Process.........12

        2. CIPA applies to internet communications .............................................13

        3. Defendant's Consent Argument Cannot be Resolved at Pleading Stage ..14

    E. Defendant's CCPA Argument are Unavailing .............................................15

V. CONCLUSION............................................................................................15

CERTIFICATE OF SERVICE.............................................................................17

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 8

*Camplisson v. Adidas America, Inc.,* 809 F. Supp. 3d 1095 (S.D. Cal., Nov. 18, 2025) ......................................................................................................... 12

*Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)................................................................................ 12

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) ................................................................................................................... 11

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ................................................................................................................... 11

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) ..................................................................................................... 7

*In re Katrina Canal Breaches Litig.,* 485 F.3d 191 (5th Cir. 2007) ....................... 7

*Kokkonen v. Guardian Lfie Ins. Of Am.*, 511 U.S. 375 (1994)................................ 7

*Krzyzek v. OpenX Technologies, Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ................................................................................................................9, 11

*Lane v. Halliburton,* 529 F.3d 548 (5th Cir. 2008) ................................................. 7

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ..................................................................................................... 7

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ..................................................................................... 12

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024)..... 12

*Pemberton v. Restaurant Brands International, Inc.*, Case No. 25-cv-03647-JSC (N.D. Cal., Nov. 24, 2025)..................................................................................... 10

*Plotkin v. IP Axess Inc.,* 407 F.3d 690 (5th Cir. 2005)............................................ 8

*Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001) ....................................... 7

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025)..................................................................................................................... 11

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) ........... 12

*Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308 (2007)......................... 7

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) .......................... 8

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ..................... 8

Statutes

Cal. Civ. Code § 1798.175 ................................................................................. 15

Cal. Civ. Code § 1798.50 ................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant's motion to dismiss either ignores or rewrites relevant allegations in the First Amended Complaint so that the pleadings are possible to challenge. Plaintiff does not allege a bare statutory violation or anonymous collection of routine browser information. He alleges that Interplay embedded third-party data-broker software that captured his identifying signals, transmitted them to LiveRamp, assigned him a LiveRamp ID, and used that data for deanonymization, profiling, targeting, and ongoing browsing tracking. FAC ¶¶ 29–34. This is both a concrete harm a cognizable claim under California's trap and trace law.

As to Article III standing, Defendant reframes the FAC's allegation to fit into the handful of cases that have held that individuals whose information has been captured are not concretely harmed. The motion even goes so far as to suggest that the data broker on Defendant's website doesn't mean any harm at all – it only wants some "anonymous" data for "routine" website operation. Defendant argues flatly that the Court should take its word over Plaintiff's that there is in essence "nothing to see here." Defendant's characterizations do not correspond to reality, and in any case, should not be adopted wholesale by the Court at this stage. There is nothing routine about embedding data broker software on your website. There is nothing anonymous about the data collected. The motion should be denied.

Similarly, Defendant's argument that California's trap and trace law, passed in 2016, was intended only to apply only to telephones (a means of communicating already in steep decline at the time) is absurd on its face. No legislature would pass a law protecting privacy rights only as it relates to one waning technology, while allowing big tech to guard the henhouse as it relates to internet privacy. Again, Defendants offer no rational basis is offered for the distinction they make – only more incredulous and strained lawyering. The Court should allow this case to proceed.

## II.    RELEVANT FACTUAL BACKGROUND

Interplay owns, operates, and controls the Website, through which it offers vocational and technical training services. FAC ¶ 8. The FAC alleges that Interplay used that Website to implement a surveillance scheme through third-party data-broker software. FAC ¶¶ 10–11.

The FAC explains that the challenged software is not part of ordinary website browsing. It alleges that the software "deliberately captures and sends additional visitor-identifying signals to third parties" so that those third parties can determine who the visitor is, or likely is, and link the visit to an identity profile. FAC ¶ 11. The FAC alleges that this extraction is not required to render the Website and exists to create commercial value from Website visitors. FAC ¶ 11.

The FAC further alleges that Interplay partnered with LiveRamp, a data broker, "by installing software on the Website in order to deanonymize, identify and target prospective customers," while allowing LiveRamp to access, use, and monetize the data provided through Interplay's Website. FAC ¶ 20. The FAC alleges that Interplay "selected LiveRamp and chose to embed or deploy its code on the site." FAC ¶ 20.

The LiveRamp DBSDK allegedly functions in three steps. First, when it loads on a webpage, it immediately captures identifiers present in that context, including first-party cookie IDs, platform IDs, IP address, and user-agent information. FAC ¶ 24.

Second, that data is sent to LiveRamp's servers, where LiveRamp combines the information obtained from the Interplay visit with other data about the individual, including name, postal address, email address, cookie IDs, and mobile device IDs. FAC ¶ 25.

Third, the user is matched to a pre-existing RampID, which Plaintiff alleges is permanent and designed to persistently track an individual across thousands of websites. FAC ¶ 26.

The FAC alleges that LiveRamp's identification occurs in real time and across devices, allowing websites using LiveRamp to identify that the same account or person has accessed the website from different devices. FAC ¶ 27. The FAC further alleges that visitors do not meaningfully consent to this identification because the tracking is third-party, occurs by default, and visitors are not made aware of or able to disable the tracking and identification. FAC ¶ 28.

Plaintiff alleges that he visited the Website on July 18, 2025, and that his identifying information was sent to LiveRamp. FAC ¶ 29. The FAC alleges that the information sent included, at minimum, Plaintiff's approximate location through IP address and data about his browser and device. FAC ¶ 29. The FAC further alleges that LiveRamp obtained this information through a GET request and assigned Plaintiff a specific LiveRamp ID. FAC ¶ 30.

Plaintiff alleges that the purpose of this data transfer was "de-anonymization, profiling, targeting and ongoing browsing tracking," and that the transfer financially benefitted both Interplay and LiveRamp. FAC ¶ 31. Plaintiff further alleges that LiveRamp took Plaintiff's information and added it to its profiles of Plaintiff, and that Interplay received other relevant data from LiveRamp regarding Plaintiff. FAC ¶ 32. The FAC alleges that the "only purpose" of the LiveRamp DBSDK is to identify users by matching their details to an "Identity Graph." FAC ¶ 33.

Finally, Plaintiff alleges that he lost control over his personal information because he has no way to know what LiveRamp did with his data, what inferences LiveRamp gleaned from it, or when, why, and to whom LiveRamp sold or licensed that data. FAC ¶ 34. Plaintiff alleges that he had a concrete privacy interest in browsing vocational-training content without being secretly identified by a third-party data broker. FAC ¶ 34. He further alleges that he was never informed of, and therefore could not consent to, data collection by LiveRamp for mercantile purposes. FAC ¶ 35.

## III.   **LEGAL STANDARD**

### A.   **Legal Standard for a Motion to Dismiss Under Rule 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

### B.   **Legal Standard for a Motion to Dismiss Under Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. *See Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 485 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion, *see Twombly,* 550 U.S. at 555-56, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. All reasonable inferences will be resolved in the favor of the plaintiff, and plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

In determining whether a plaintiff's claim survives a Rule 12(b)(6) motion, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## IV.   ARGUMENT

### A.   Plaintiff has Article III Standing

Defendant argues that Plaintiff alleges only the collection of anonymous, generic information. That argument ignores the actual allegations.

The FAC alleges that Interplay embedded LiveRamp's data-broker software to deanonymize, identify, and target prospective customers. FAC ¶ 20. It alleges that LiveRamp specializes in deanonymizing website users and creates a persistent RampID for individuals. FAC ¶¶ 23–27. It alleges that Plaintiff personally visited the Website, that LiveRamp obtained his identifying information through a GET request, and that LiveRamp assigned him a specific LiveRamp ID. FAC ¶¶ 29–30. It alleges that the purpose of the transfer was deanonymization, profiling, targeting, and ongoing browsing tracking. FAC ¶ 31. And it alleges that Plaintiff lost control

over his personal information because of Interplay's surveillance practices. FAC ¶ 34. Those facts are sufficient to allege a concrete privacy injury.

In *Krzyzek v. OpenX Technologies, Inc.*, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) the court rejected the same "anonymous data" argument where the complaint alleged that the defendant used collected data to tie users to profiles in an identity graph. *See Id.* at *9. The court held that where anonymity is rendered "functionally meaningless," pseudonymization arguments are unpersuasive, and the plaintiffs adequately alleged a highly offensive privacy intrusion sufficient for standing. *Id.* at *10.

That reasoning applies even more directly here. Plaintiff does not merely allege that LiveRamp could theoretically identify users. He alleges that LiveRamp's only purpose is to identify users, that it uses identity graphs to map relationships between identifiers and persons or accounts, and that Plaintiff himself was assigned a LiveRamp ID during his visit. FAC ¶¶ 30, 33.

Defendant also argues that Plaintiff fails to allege a highly offensive intrusion. But the FAC alleges secret third-party identification of a California resident browsing vocational-training content. FAC ¶ 34. Plaintiff alleges he was never informed of, and could not consent to, LiveRamp's collection for mercantile purposes. FAC ¶ 35. In *Krzyzek*, the court held that allegations of data-broker tracking, profile creation, identity-graph matching, and ongoing cross-site tracking were sufficient at the pleading stage. U.S. Dist. LEXIS 15195, at *11-13.

The same is true here. Whether LiveRamp's conduct was "highly offensive," what exactly was transmitted, and how LiveRamp used Plaintiff's data are factual issues for discovery. They cannot be resolved by accepting Defendant's characterization of LiveRamp as a routine analytics vendor.

**B.    Plaintiff Adequately Alleges Collection of Identifying Information.**

Defendant contends that Plaintiff does not identify what information was collected, which is simply incorrect.

The FAC alleges that the LiveRamp DBSDK immediately captures first-party cookie IDs, platform IDs, IP address, and user-agent information. FAC ¶ 24. It alleges that LiveRamp combines that information with other online and offline data, including name, postal address, email address, cookie IDs, and mobile device IDs. FAC ¶ 25. It alleges that the user is then matched to a persistent RampID that does not change when cookies are cleared or devices are switched. FAC ¶ 26.

As applied to Plaintiff, the FAC alleges that his approximate location, browser data, and device data were sent to LiveRamp; that LiveRamp obtained that information through a GET request; and that LiveRamp assigned Plaintiff a unique LiveRamp ID. FAC ¶¶ 29–30.

This level of detail about the inner workings of Defendant's website is more than sufficient at this stage. In fact, the FAC alleges more than other cases where the level of detail was found to be sufficient. For example, in *Pemberton v. Restaurant Brands International, Inc.*, Case No. 25-cv-03647-JSC (N.D. Cal., Nov. 24, 2025) the court found similar allegations sufficient when the Complaint alleged the collection of browsing history, visit history, website interactions, user input data, device information, session information, user identifiers, and geolocation data. The court held that the plaintiff alleged deprivation of control over personal information, as here, which was sufficient for Article III standing.

Plaintiff's allegations go farther than *Pemberton*. Plaintiff alleges not only the collection of device and browser information, but also the use of that information by a data broker to match him to a persistent identifier and identity graph. FAC ¶¶ 23–34. Plaintiff alleges not only deanonymization, but the detailed process by which Defendant uses specific LiveRamp software to deanonymize and sell Plaintiff's information to data brokers. No more is needed.

C.    **Plaintiff Adequately Alleges Traceability.**

Defendant argues that Plaintiff does not trace any injury to Interplay. But the FAC alleges that Interplay selected LiveRamp, chose to embed or deploy its code

on the Website, and caused Plaintiff's identifying data to be transmitted to LiveRamp when Plaintiff visited the Website. FAC ¶¶ 20, 29–31.

The causal chain is straightforward: Interplay operated the Website; Interplay installed LiveRamp's DBSDK; Plaintiff visited the Website; the LiveRamp DBSDK captured and transmitted Plaintiff's identifying information; LiveRamp assigned Plaintiff a LiveRamp ID which allows LiveRamp to commoditize Plaintiff's future internet conduct. FAC ¶¶ 20, 22–34.

Defendant's traceability argument improperly reframes the injury as speculative future misuse. But the injury alleged is the unauthorized collection, transmission, deanonymization, and profiling itself. That injury is directly traceable to Interplay's decision to deploy LiveRamp on the Website and LiveRamp's subsequent collection for mercenary purposes. What LiveRamp choses to do with its ill-gotten personal information is not knowable or needed for the claim.

**D.      The FAC States a Claim Under CIPA § 638.51.**

**1.      The FAC alleges that LiveRamp SDK is a Trap and Trace Process.**

As federal courts in California have recently opined, "[n]umerous courts in this district and elsewhere have already found pixels to be "pen registers" at the pleading stage, and [Defendant's arguments tread no new ground.") *Krzyzek*, *supra*, at 15. *See, e.g., Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865,

2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024).

The plain wording of the statutory language is unambiguously broad, encompassing internet technology and software.  Here, the FAC tracks the statutory language almost word for word and provides detailed facts about the software deployed on Defendant's website, which is more invasive than a social media pixel. See FAC ¶ ¶ 36- 38.  The FAC further alleges that Defendant did not obtain a court order and did not obtain Plaintiff's consent to data sharing with LiveRamp for deanonymization, profiling, and targeting. FAC ¶¶ 39–40.  No more is needed.

Similar allegations were sufficient in *Camplisson v. Adidas America, Inc.,* 809 F. Supp. 3d 1095 (S.D. Cal., Nov. 18, 2025), where Plaintiff alleged that trackers like the Meta Pixel fit in the trap and trace law[1] when they collected addressing information contained in an IP address. *Id.* at 1107. Here, again, the FAC alleges more, that the process captured IP addresses, user-agent information, browser and device data, cookie IDs, platform IDs, and create a unique, persistent LiveRamp ID. FAC ¶¶ 24–30.

Defendant cites no authority for the proposition that data broker software is not invasive enough to be plausibly considered a trap and trace device.  The motion should be denied.

### 2.    CIPA applies to internet communications.

Defendant argues that § 638.51 is limited to old telephone technology. CIPA protects invasion of privacy and not just invasion of privacy using phones.  This is

---

[1] The Court uses the term "pen registers" instead of trap and trace device in the opinion.

obvious since the statutory definition itself refers to wire or "electronic communications." FAC ¶ 36.

Interplay's motion makes the same categorical argument those courts rejected. At minimum, whether LiveRamp's DBSDK functions as a process that captures routing, addressing, or signaling information reasonably likely to identify the source of electronic communications is a factual and technical issue that cannot be decided against Plaintiff on the pleadings.

### 3. Defendant's Consent Argument Cannot be Resolved at Pleading Stage.

Defendant's consent argument is at odds with Plaintiff's contention that no consent was given. As such, it should not be resolved here. Regardless, the FAC alleges lack of consent in multiple ways. It alleges that visitors, including Plaintiff, do not meaningfully consent to LiveRamp identification because the tracking is third-party, occurs by default, and visitors are not made aware of or able to disable it. FAC ¶ 28. It alleges that Plaintiff was never informed of, and therefore could not have consented to, data collection by LiveRamp for mercantile purposes. FAC ¶ 35. It alleges that Defendant did not obtain Plaintiff's express or implied consent to data sharing with LiveRamp for deanonymization, profiling, and targeting. FAC ¶ 40.

Defendant cites nothing to suggest that the capture and sale of deanonymizing information would occur, let alone to a data broker. At best, Defendant's reliance on website disclosures or opt-out mechanisms raises factual issues: what Plaintiff saw, what was disclosed, whether LiveRamp was identified, whether deanonymization was disclosed, whether the disclosures covered identity-graph matching, and whether Plaintiff actually consented to the specific conduct alleged, even assuming it was disclosed in a manner where consent can be definitively be established.

### E.    Defendant's CCPA Arguments are Unavailing

Defendant last argues that the CCPA eliminated the right of plaintiffs to pursue claims under CIPA.  The opposite is true. several provisions of the CCPA clearly state that the law is not meant to curtail other privacy statutes. For example, the CCPA explains that the private right of action it creates under section 1798.50 for the "unauthorized access and exfiltration, theft, or disclosure [of consumer's personal information] . . . shall not be construed to relieve any party from any duties or obligations imposed under other law or the United States or California Constitutions." Cal. Civ. Code § 1798.50(a)(1), (c).

More broadly, section 1798.175 explains that the CCPA "is intended to further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information," and that, "[w]herever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title." *Id.* § 1798.175 (emphasis added). The statute goes further: "in the event of a conflict between other laws and the provisions of [the CCPA] the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.*

## V.    CONCLUSION

For the foregoing reasons, the motion should be denied.

DATED: May 27, 2026                    TAULER SMITH LLP

By:    */s/ Robert Tauler*
Robert Tauler, Esq.
(SB # 24122095)
 *rtauler@taulersmith.com*
J. Evan Shapiro, Esq.
(SB # 218481 [California])
(*pro hac vice* forthcoming)
 *eshapiro@taulersmith.com*

**TAULER SMITH LLP**
626 Wilshire Bvld., Suite 550
Los Angeles, CA 90017
Telephone: (213) 927-9270

100 Crescent Court, 7th Floor
Dallas, TX 75201
Telephone: (512) 456-8760

*Attorneys for Plaintiff Forrest Allen*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 27, 2026, a true and accurate copy of the foregoing document was served on all parties via the Court's CM/ECF system.

DATED: May 27, 2026          TAULER SMITH LLP

By:    */s/ Robert Tauler*
          Robert Tauler, Esq.
          (SB # 24122095)
           *rtauler@taulersmith.com*
          J. Evan Shapiro, Esq.
          (SB # 218481 [California])
          (*pro hac vice* forthcoming)
           *eshapiro@taulersmith.com*

          **TAULER SMITH LLP**
          626 Wilshire Blvd., Suite 550
          Los Angeles, CA 90017
          Telephone: (213) 927-9270

          100 Crescent Court, 7th Floor
          Dallas, TX 75201
          Telephone: (512) 456-8760

          *Attorneys for Plaintiff Forrest Allen*